Gouley, Appellant, *v.* Land Title Bank and Trust Company.

Argued November 26, 1937. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry Gouley,* with him *William R. Toal,* for appellant.

*Charles I. Thompson,* with him *Thomas Burns Drum, Robert von Moschzisker* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE BARNES, March 21, 1938:

This is a proceeding in equity, against the trustee under a corporate mortgage securing an issue of bonds, to hold the trustee accountable for losses sustained by the bondholders, resulting from alleged breaches of trust upon its part. The plaintiff, a bondholder, on behalf of herself and others similarly situated, asks that the defendant trustee be removed and a successor trustee be appointed in its place, for an accounting of all moneys received by it as trustee, and for a decree ordering the defendant to account and pay to the successor trustee when appointed a sum equal to the loss and damage suffered by the bondholders by reason of its alleged misconduct. After hearing, the court below dismissed the bill upon the ground that the evidence disclosed no

breach of trust or other misconduct on the part of defendant, and for the further reason that exculpatory provisions of the mortgage relieved the trustee of responsibility save for gross negligence or wilful default. From the dismissal of the exceptions to this decree, plaintiff has taken this appeal.

The mortgage in question was given by one James P. Rothwell, Jr., to the Land Title and Trust Company, as trustee, predecessor of the present defendant, upon property known as the Benjamin Franklin Hotel, located at Ninth and Chestnut Streets, in the City of Philadelphia, to secure an issue of bonds in the principal amount of $6,600,000, of which $4,300,000 were designated as "Class A" bonds, and $2,300,000 as "Class B" bonds, all of which are issued and outstanding. In addition to the security of the mortgage, the "Class A" bonds were guaranteed, both as to principal and interest, by the Philadelphia Company for Guaranteeing Mortgages.

On or about December 3, 1929, plaintiff purchased and still holds a $1,000 "Class A" bond. She received a written guarantee accompanying the bond, as did all other purchasers of these bonds. Under the terms of the guarantee the Philadelphia Company was made the sole and exclusive agent for all "Class A" bondholders.

The mortgage, which was duly recorded, was dated February 15, 1923, and was for a term of ten years, the entire principal falling due upon February 15, 1933. By Article II of the indenture, the mortgagor covenanted to make monthly payments to the trustee on account of taxes, interest, insurance and other items; and the trustee covenanted, upon receipt of the monthly payments, to apply the same to the purposes for which they were received. In addition, it was provided in Article III of the mortgage that semi-annual payments should be made to the trustee and used to redeem "Class A" bonds, or to create a sinking fund for their payment at maturity.

Plaintiff avers that after the Philadelphia Company for Guaranteeing Mortgages had been placed in receivership in January, 1933, she learned for the first time that the mortgage securing the "Class A" bonds had been in default since March, 1926; that no semi-annual payments had been made to the sinking fund, since August, 1925, by the mortgagor, or by the Company which was his successor in title to the hotel property. She asserts that she was ignorant of these defaults when she purchased her bond in 1929. Plaintiff further alleges that she also learned for the first time in January, 1933, that the monthly payments on account of interest had not been met after March 15, 1932.

Defendant admits that these defaults occurred on the part of the mortgagor, and that it gave the 1,400 holders of "Class A" bonds no notice thereof, although the Philadelphia Company for Guaranteeing Mortgages, as sole agent for such bondholders, was duly notified by it of each default.

The failure of the defendant trustee to give notice directly to plaintiff and to all other "Class A" bondholders, of the defaults of the mortgagor, constitutes the alleged breaches of trust upon which the relief sought by the bill is based. There are no allegations contained in the bill that defendant was guilty of fraud or of wilful breach of trust. But plaintiff argues that defendant's failure to notify the bondholders amounted to a concealment of the defaults, and is to be deemed a wilful breach of its duty as trustee. Defendant answers that it was not required by the terms of the mortgage to send notices to the bondholders individually, respecting any defaults of the mortgagor, and that in any event its duty was completely performed when notification thereof was given to the guarantor, as the bondholders' agent.

The nature and extent of the duties of a corporate trustee are primarily to be ascertained from the trust instrument. Such duties are those assumed under the terms and conditions of the contract itself, rather than

inherent in the general law governing trust relationships: *Newhall v. Norristown Trust Co.*, 280 Pa. 195; *Drueding v. Tradesmens National Bank and Trust Co.*, 319 Pa. 144; Restatement, Trusts, Section 164.

In the present case the terms of the trust and the duties imposed upon the trustee are set forth at length in the recorded mortgage, to which each bond referred, and with which every bondholder could have become familiar if the effort were made. The duties of the trustee in case of default are stated in Article V of the mortgage, and it there clearly appears that the trustee is not required to take any action unless requested by the bondholders. This is specifically provided under the terms of Section 10 of this Article, which read as follows: "It is expressly understood and agreed that the Trustee shall not be under any obligation to take notice of any default hereunder of the said James P. Rothwell, Jr., or to give effect to any such default or to recognize the same for any purpose under this Mortgage, unless requested in writing by the holders of twenty-five per cent in amount of the 'Class A' bonds or a like amount of 'Class B' bonds secured hereby and outstanding at the time, accompanied by the production and deposit of their bonds, and unless indemnified to its satisfaction in the premises, against all loss, costs and expenses of every kind. . . ."

Article VI of the mortgage further enlarges the exemption of the trustee. Section 2 of this Article provides, inter alia, that the trustee shall not be responsible for any breach of the covenants of the mortgage by the mortgagor, nor liable for anything except its own wilful and intentional breaches of trust, and that the trustee shall not be required to undertake any proceedings unless indemnified against all expense by the bondholders.

The effect of these provisions is to relieve the defendant of any duty to notify the individual bondholders of defaults by the mortgagor, or to recognize the same for any purpose under the mortgage, unless requested in

writing by twenty-five per cent of the bondholders to take action.

The plaintiff, in the recorded mortgage, was thus put on notice of the fact that the trustee was not obligated to notify her and the other bondholders of any such defaults, and she cannot now maintain that the failure of the trustee to perform an act which was not required of it by the trust instrument was a breach of duty for which it is liable to the bondholders. Of course, any limitation in a trust instrument of the duties of a trustee which is opposed to public policy, or which is illegal in any way will not be given effect: *Benton v. Safe Deposit Bank,* 255 N. Y. 260; Restatement, Trusts, Section 166. These provisions of the present mortgage defining the duties of the trustee and exempting it from liability except for gross negligence or wilful and intentional breach of trust are valid and enforceable. They offend no policy of the law nor any statute of the Commonwealth. Similar provisions have been sustained by this Court whenever their validity has been questioned before it:* *Bell v. Scranton Trust Co.,* 261 Pa. 28; *Newhall v. Norristown Trust Co.,* supra; *Bell v. Title Trust & Guarantee Co.,* 292 Pa. 228; *Drueding v. Tradesmens Bank and Trust Co.,* supra. See Restatement, Trusts, Section 222.

Plaintiff contends, nevertheless, that the failure of the defendant to notify the bondholders was a wilful and intentional breach of trust, because of the relation between the defendant trustee and the Philadelphia Company for Guaranteeing Mortgages. Much of the testimony presented in the court below was to the effect that there was a close relation between the two corporations. It was shown that the same persons were officers of both trustee and guarantor; that at one time they had as many as seven directors in common, and that the

---

* For full discussion of the subject, reference is made to the article, "Liability of the Corporate Trustee," by Louis S. Posner, in Harvard Law Review, Vol. 42, page 198.

guarantor was largely indebted to the trustee bank. Under these circumstances, plaintiff argues, the defaults of the mortgagor were wilfully concealed by the trustee in order to protect the guarantor from claims which would otherwise have been made against it.

This argument is based upon the well settled principle that no exculpatory provision in a trust instrument can permit a trustee to act in bad faith: Restatement, Trusts, Section 222(2). But, while well founded in principle, plaintiff's argument finds no support in the testimony. The facts shown as to the relation between the two companies do not prove bad faith, or that there were any improper motives upon the part of defendant's officers. The most that can be said is that these facts disclose a situation which awakens suspicion. Suspicion, however, is not proof of bad faith or fraudulent action, and the record is without evidence which would tend affirmatively to prove that defendant's actions were improperly motivated.

From our review of the record we are satisfied that it was not error for the court below to enter a decree dismissing the bill of complaint.

The decree of the court below is affirmed, costs to be paid by appellant.