## In re Pittsburgh Press Company Retirement Plan

*J. Craig Kuhn,* for petitioners.
*W. Gregg Kerr,* for respondent.

ROSS, E., *J.,* July 26, 1979—On April 17, 1979, the Retirement Board of the Retirement Benefit Plan of the Pittsburgh Press Company and Pittsburgh Newspaper Printing Pressmen's Union No. 9 and the Pension Board of the Pension Trust Plan of the Daily News Publishing Company and Pittsburgh Newspaper Printing Pressmen's Union No. 9 petitioned the court for citation directed to respondent, Equibank, N.A., formerly Western

Pennsylvania National Bank, to show cause why respondent bank should not account to petitioners and reimburse the pension trust for investment losses during the trust administration from 1965 until January 1, 1974, the effective date of the Employment Retirement Income Security Act of 1974 (ERISA) of the United States Government.

Respondent filed an answer and new matter. After stipulations of counsel the parties pursued discovery. Admissions requested by Equibank and admitted by petitioners have been filed, along with interrogatories, minutes of board meetings, copies of accounts filed by Equibank with the board petitioner, affidavits and copies of notes and correspondence. When discovery was completed, Equibank filed a motion for summary judgment and the board a cross-motion for summary judgment. The cross-motion is in part a denial of the right of Equibank to summary judgment in that it again asks the court to require an account by Equibank; it also requests the court to find as a matter of law that trustee-respondent has a duty to account.

Oral and written arguments having been submitted to the court, the motions are ripe for disposition.

The formal relationship between petitioners and respondent began March 8, 1965, with the execution of a trust agreement in which the parties agreed that Equibank would act as trustee for certain funds to be utilized for pensions and retirement of employes affiliated with petitioners. Pursuant to the trust agreement Equibank was given the power and discretion to invest and reinvest the trust fund, to sell, exchange, convey, transfer or dispose of property, to retain cash, to exercise rights as stock-

holders, to compromise and adjust claims and to do all acts and exercise all powers deemed proper by the trustees in fulfilling the trust purposes.

Among other duties conferred on Equibank, article IV, paragraph 5, of the agreement provided:

"5. The Trustee shall promptly furnish to the Board and each member thereof annually, or more often if requested by the Board, a written statement of its account, said statement to set forth, among other things, all investments, receipts, disbursements and other transactions to which the Trustee was a party under this Trust Agreement during said calendar year, and to show all cash, securities and other property held in the Trust Fund at the end of such period. Annually, and more often if requested, the Trustee shall review and discuss investment policy with the Board."

Paragraphs six through eight of the trust agreement in article IV outline a procedure to be followed in the event the board has any requests regarding or objections to the annual accounts filed by Equibank. By the terms of the agreement, if within 90 days of the filing of an account with the board, it failed to file written objections thereto, the trustee was to be released and discharged from liability (except in circumstances of fraud or manifest error). If objections were filed and not amicably resolved within 90 days (or a mutually extended time) either the board or the trustee was granted the right to institute proper proceedings in the Court of Common Pleas of Allegheny County, Pennsylvania.

The trust agreement further provided in article V that the responsibility and liability of Equibank was

to be governed solely by the agreement which in article V imposed a standard of "ordinary care and reasonable diligence" upon the trustee. Article VI of the trust agreement gave the board the right to remove Equibank as trustee at any time upon written notice.

Prior to the negotiation and execution of the trust agreement the board employed actuaries, sought advice of various financial institutions and compared charges and services of each, according to the affidavit of William J. Kane. Mr. Kane's notes indicate he knew objections had to be filed within the agreement time limit or the account would be approved. The facts adduced from discovery and the admissions show that for each of the nine years now in question the trustee submitted a statement of the pressmen's account to the board. In addition, during any year when all or part of the fund was invested in any of Equibank's commingled funds, the bank submitted a copy of the audited annual report for the commingled funds to the board. As required by the trust agreement, each of the above statements set forth all investments, receipts and disbursements by the trustee for the calendar year and showed all cash, securities and other property held in the trust account at the end of each period. Each commingled fund report set forth all investments, receipts and disbursements to which the bank was a party under any of its commingled fund plans during the calendar year and showed all cash, securities or other property held in any of the commingled funds at the end of each period.

The facts also reflect that the board filed no written objections within 90 days of receipt of either the statements of the pressmen's account nor of the

reports as to the commingled funds. Prior to January 1, 1978, the only questions as to the statements or to the reports were made orally by the board as to 1966, 1967, 1969 and 1973 accounts (see minutes of the board, March 29, 1966, May 11, 1967, May 15, 1968, March 18, 1970 and February 14, 1974, Appendix A, B, C, D and E).

The board did not at any time during the years in question, exercise its unqualified right to remove Equibank as trustee.

In its motion for summary judgment Equibank advances two arguments: (1) that the board failed to file written objections to the annual statements of the pressmen's account within 90 days and thus Equibank is relieved of any responsibility further to account by virtue of the trust agreement and (2) that the equitable doctrines of estoppel and laches apply and by reason of the board's acquiescence in the accounts and failure to object, it is estopped from objecting now, years after the filing of the last account in question in this proceeding.

Petitioners argue that they placed a special reliance on Equibank which allegedly represented it had special skills and qualifications in the area of pension trust administration and that respondent's duty of care is a high degree of skill because of its expertise rather than the ordinary care and reasonable diligence set forth in the agreement. Alternatively, petitioners contend that the accounts filed were not complete in that they failed to disclose dates, prices and expenses of sales and purchases.

Neither in the petition nor the cross-motion for summary judgment has the board made any allegation of bad faith or manifest error on the part of Equibank which under article IV, paragraph 6,

would be a ground to prevent the release and discharge of the trustee after filing its statement which was not timely objected to.

The court notes first that pension trusts are excluded from orphans' court division jurisdiction under the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, sec. 2, as amended, 20 Pa.C.S.A. §711(3). Since adoption of the Judicial Code of July 9, 1976, P.L. 586, sec. 2, 42 Pa.C.S.A. §952, the walls separating the divisions of common pleas courts are no longer inflexible and impenetrable and each division is vested with the full jurisdiction of the whole court. The fact that an issue is adjudicated in the "wrong" division is no longer a jurisdictional question to be raised on appeal on the ground of fatal defect: Sto-Rox Focus on Renewal Neighborhood Corporation v. King, 40 Pa. Commonwealth Ct. 640, 398 A. 2d 241, 243 (1979). The court on its own motion will not direct the parties to take the present case to the civil division. It recognizes the fact that the issues raised by the proceeding are more commonly tried in the orphans' court division.

It is recognized as a general principle of law that a trustee is under a duty to keep and render clear and accurate accounts with respect to the administration of the trust: Restatement, 2d, Trusts, §172.

The trust agreement conformed with this duty, requiring Equibank to file annual accounts not with a court but with the board. The accounting contemplated was private not judicial in the absence of objection. A review of the accounts now attacked shows them to be clear and detailed, setting forth all investments, receipts and disburse-

ments, cash, securities and property in the pressmen's account at the end of the period as well as the same items as to the commingled funds at the end of such period. Nothing is omitted that would be required if this were the usual inter vivos trust subject to Allegheny County Orphans' Court Division Rule 3, the so-called account rule. The accounts fully and fairly set forth what was held by the trustee at the beginning of the period, how it was managed during the period and the status of the account at the end of the period accounted for. The omission of dates of purchases or sales, proceeds of sale and expenses of purchase and sale of trust securities does not make the statements incomplete. Even had such information been supplied it would not have added an iota of material information to that given in order to enable the board to object intelligently to the statements. Also, such information was not required by the agreement.

Petitioners argue that Equibank had a duty to file more complete accounts and that as a corporate trustee holding itself out as having special skills and qualifications it is subject to a higher standard than ordinary care and reasonable diligence. In support of this argument petitioners cite Killey Trust, 457 Pa. 474, 326 A. 2d 372 (1974), and In Re Mendenhall, 484 Pa. 77, 398 A. 2d 951 (1979). If the court had to face the issue of standard of care, such cases might be relevant. However, these cases differ from the case at hand in which the trust agreement provides the standard care of the trustee will be "ordinary care and reasonable diligence." Even if this were not so, the issues raised by petitioners cannot properly be addressed unless this court first decides that petitioners are not bound by article V of the trust agreement wherein they are

alloted a 90-day time period to file written objections to accounts filed by Equibank in the absence of fraud or manifest error which exceptions are not pleaded by petitioners.

After consideration of the main issue before it, the court finds that the trustee filed fair, clear, fully informative, detailed accounts and that therefore the provisions of the trust agreement are controlling and that, having failed to comply with the contract terms as to objections, petitioners are barred from requiring Equibank to file an account at this time.

Clearly, any general duties of a trustee can be waived, altered or modified by the mutual execution of a trust agreement that establishes its own special powers, duties and obligations. While there is a general duty to account, a formal accounting may be dispensed with by the agreement unless prohibited by statute; the contract also may provide that the trustee shall be under no duty to account: Restatement, 2d, Trusts, §172.

The instant contract provides means for settling the trustee's account out of court. When private settlements between a trustee and cestui que trust are untainted by fraud or duress, they will relieve the trustee from accounting: Schoch's Appeal, 33 Pa. 351, 355 (1859). Provisions in trust instruments that require a trustee to render periodic accounts to the beneficiary and which relieve the trustee of liability and finally and completely discharge him with respect to matters covered by such accounts repeatedly have been upheld by the courts. See Schutz's Will, 30 N.Y.S. 2d 887, 890, 177 Misc. 477 (1941).

The case law of this Commonwealth has recognized provisions as to the duty of the trustee set forth in trust agreements to be controlling.

In Gouley v. Land Title Bank and Trust Company, 329 Pa. 465, 469, 198 Atl. 7 (1938), the court stated: "The nature and extent of the duties of a corporate trustee are primarily to be ascertained from the trust instrument. Such duties are those assumed under the terms and conditions of the contract itself, rather than inherent in the general law governing trust relationships." The court found that the bondholder plaintiff was put on notice that individual notice of default was not required to a bondholder because her bond referred to the mortgage containing the terms of the trust and held that the trustee's failure to perform an act which was not required by the agreement was not a breach of duty: Gouley v. Land Title Bank and Trust Company, supra, 470.

In Appeal of Burke, 378 Pa. 616, 108 A. 2d 58 (1954), the trustees were accused of self-dealing and the breach of their general duty of loyalty in their purchase of trust property. However, the court, noting that the trustees were permitted such actions in the trust agreement, stated on page 63: "There can be no doubt that by the terms of the trust, a trustee may be permitted to do what in the absence of such a provision in the trust instrument would be a violation of his duty of loyalty." (See also Spring v. Hawkes, 351 Pa. 602, 41 A. 2d 538, 541 (1945), wherein the court upheld an exculpatory clause relieving the trustee from liability for conduct except wilful misconduct or gross negligence when the beneficiary by contract for her own benefit agreed to a different standard.)

While the provisions in these agreements are not the same provisions now before us, the emerging principle of law is clear that when the parties have entered into a trust agreement the agreement is binding as to the parties' rights and duties even if it

alters or modifies the relationship as it would exist under general trust law.

Article IV of the trust agreement did not modify any obligation in a manner that is detrimental to petitioners. Rather it provided for a private method of accounting with the furnishing of accounts on an annual basis, more regularly than this court requires of any trustee subject to its jurisdiction. It further provides for amicable resolution but, if not achieved, there may be recourse to this court. Article IV imposes time limits for written objections of 90 days after the trustee has met its duty to account annually.

The evidence on the record reflects that petitioners consulted with persons having special knowledge and expertise in the subject of the contract prior to entering into the agreement. The record further reflects that during negotiations the notice provision was originally set up 60 days and then changed to 90 days (notes of William J. Kane, January 7, 1974).

Having determined that respondent filed detailed, fully informative accounts, petitioners were required to file timely written objections thereto and the court finds no timely written objections were filed by petitioners as they have admitted. Petitioners argue that their oral objections to several accounts are reflected in minutes of the board made part of the record during discovery. It is clear, however, that oral objections are insufficient under the terms of the trust instrument. The court also questions whether the discussions in the minutes can be construed as objections. At the most, they indicate some discussion as to investments with explanation by the trustee followed by basic acquiescence by the board in the handling of the single and commingled funds by Equibank.

While the court might have looked beyond the instrument had petitioners alleged bad faith or manifest error, such is not the case at hand. Therefore, the provisions of the trust agreement are binding and petitioners having failed to comply by the filing of timely written objections are now barred from requiring a further account from Equibank which has been fully discharged from such duty.

Equibank has also argued that petitioners are estopped from objecting by their acquiescence over a long period in the trustee's management and accounting and that laches apply. The court has already decided that the petition does not lie because of petitioners' failure to object to a detailed account in the manner provided by the agreement so that Equibank has been discharged and released from the duty further to account and it is not necessary to go into the issues of laches and estoppel.

The court need not consider issues of the standard of care of Equibank since the petitioners are barred from proceeding further by reason of their failure to comply with the trust agreement and since the trust instrument on its face sets the standard of care as "ordinary care and reasonable diligence."

The court thus grants the motion of respondent Equibank for summary judgment and denies the cross-motion of petitioners. An appropriate order follows.

## ORDER

And now, July 26, 1979, after argument on the motion for summary judgment of respondent, Equibank, N.A., and the cross-motion for summary

judgment of the Retirement Board of the Retirement Benefit Plan of the Pittsburgh Press Company and Pittsburgh Newspaper Printing Pressmen's Union No. 9 and the Pension Board of the Pension Trust Plan of the Daily News Publishing Company and Pittsburgh Printing Pressmen's Union No. 9 and after consideration of the pleadings, discovery, admissions, affidavits, interrogatories, minutes, copies of accounts, reports and statements, correspondence and notes of the contractors and oral and written arguments of counsel, it is hereby ordered, adjudged and decreed that respondent's motion for summary judgment is granted and petitioner's cross-motion for summary judgment is denied.