413 A.2d 1050

In re ESTATE of Leo NIESSEN, Deceased.

Appeal of John A. MEYER, Jr.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1979.

Decided April 30, 1980.

Philip D. Weiss, Norristown, for appellant.

Morris R. Brooke, Christopher H. Gabsden, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

This is a direct appeal from the approval of an accounting by the Orphans' Court Division of the Montgomery County Court of Common Pleas.[1]

Leo Niessen died on June 14, 1969, leaving a will which created a testamentary trust for the benefit of his wife (now deceased) and their issue. At the time of his death, the corpus consisted of an interest in commercial real estate and a portfolio of marketable securities valued at approximately three million dollars. Pursuant to a provision in the will,[2] Letters Testamentary were issued to the Fidelity Bank and Leo Niessen, Jr. (son of the testator) as co-executors. In March 1975, executors offered their First Account for audit to the Orphans' Court. Four beneficiaries, alleging breach of fiduciary duty in the handling of the securities by co-executor Fidelity Bank, filed objections to the account seeking surcharge. Prior to an evidentiary hearing, two objectors withdrew their claims. On January 6, 1978, based upon the information obtained at the hearing, the Orphans' Court dismissed the objections and affirmed the accounting. The exceptions that were subsequently filed were also dismissed and this appeal then taken. After the present appeal was lodged, but before our consideration, one of the remaining two objectors withdrew, leaving John A. Meyer, Jr. as the sole appellant.[3]

1. This Court's jurisdiction is based on the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202, 17 P.S. § 211.202(3) (Supp. 1978–1979); now 42 Pa.C.S.A. § 722(3).

2. Paragraph 11 of the testator's will provides: "I appoint my son Leo Niessen Jr. and Fidelity-Philadelphia Trust Company as executors of and trustees under this will; . . ."

3. Appellant holds a one-thirteenth contingent remainder interest in the residuary trust portion of the estate.

Appellant contends that the Fidelity Bank failed to exercise the care required of it as a corporate fiduciary in its management of the securities portion of the trust corpus. More specifically, it is asserted, Fidelity's retention of the entire portfolio in substantially similar condition during the entire five year period encompassed in the accounting, constitutes a breach of the fiduciary's standard of care, in that Fidelity did not "manage" the portfolio but merely performed a custodial function. For support, reference is made to five specific blocks of stock in the portfolio: Rohm and Haas Co.; Germantown Insurance Co.; Fidelcor, Inc.; certain "volatile stocks" (A.M.F., ARCO, Pennzoil and Hershey) and several utilities. Had these securities been handled differently, appellant claims, larger profits would have been obtained by the trust. Appellant correspondingly asserts the lower court's conclusion that the corporate fiduciary did not breach its duty of care is unsupported by the evidence.

This Court's responsibility upon appeal in such matters was recently reiterated in *Estate of Katkowski*, 485 Pa. 378, 381, 402 A.2d 1012, 1013 (1979):

In reviewing a decision of the orphan's court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence. *In re Estate of McCrea*, 475 Pa. 383, 380 A.2d 773 (1977).

*See In re Estate of Hamill*, 487 Pa. 592, 410 A.2d 770 (1980); *cf. Adoption of S. H.*, 476 Pa. 608, 383 A.2d 529 (1978); *In re Wertman Estate*, 462 Pa. 195, 340 A.2d 429 (1975). After review, we find that the lower court improperly applied a "superior skill" standard of care as a measure of appellee's investment conduct. That error will not, however, require reversal.

This Court has made it quite clear that where a fiduciary either possesses or represents that it possesses a skill greater than ordinary prudence, the fiduciary will be required to exercise the commensurate degree of care when

making investment decisions. *In re Mendenhall*, 484 Pa. 77, 398 A.2d 951 (1979); *Estate of Cahen*, 483 Pa. 157, 394 A.2d 958 (1978); *Killey Trust*, 457 Pa. 474, 326 A.2d 372 (1974).

Since 1941 this Court has recognized that if a fiduciary *has* greater skill than that of a man of ordinary prudence, then the fiduciary's standard of care must be judged according to the standard of a man with his special skill. (citations omitted). Today we add that one who procures his appointment as trustee by *representing* that he has greater skill than that of a man of ordinary prudence will be held to have such skill as he has represented. (citation omitted).

*Killey Trust*, 457 Pa. at 477, 326 A.2d at 374, 375 (1974).

Nothing we do here today should be read to dilute that ruling in any way. It is, however, an equally important precept in our law that where a trust instrument is explicit as to the duty owed, it, as evidencing the settlor's (testator's) intent, should govern.

■ The nature and extent of the duties of a corporate trustee are primarily to be ascertained from the trust instrument. *Gouley v. Land Title Bank and Trust Co.*, 329 Pa. 465, 468, 198 A. 7 (1938). *See* Restatement (Second) of Trusts, § 164 (1959).[4]

■ The Decedents, Estates of Fiduciaries Code provides: § 7319. Directions of testator or settlor

(a) General rule.—The testator or settlor in the instrument establishing a trust may prescribe the powers, *duties*

---

**4.** § 164 Duties and Powers of the Trustee
  The nature and extent of the duties and powers of the trustee are determined
  (a) by the terms of the trust, . . .
It is also important to note Restatement (Second) of Trusts, § 174 Comment (d) (1959):
  d. *Standard fixed by terms of the trust.* By the terms of the trust the requirement of care and skill may be relaxed or modified. A provision in the terms of the trust fixing a standard of care or skill lower than that which would otherwise be required of a trustee is strictly construed.

*and liabilities of the fiduciary* regarding the investment or noninvestment of principal and income and the acquisition, by purchase or otherwise, retention, and disposition, by sale or otherwise, of any property which, at any time or by reason of any circumstance, shall come into his control; and whenever any such provision shall conflict with this chapter, *such provision shall control* notwithstanding this chapter, unless the court having jurisdiction over the trust shall otherwise decree pursuant to subsection (b) of this section. In the absence, however, of an express restriction to the contrary in the trust instrument, the fiduciary may invest in any investment authorized by this chapter. (Emphasis added).

20 Pa.C.S.A. § 7319(a).[5]

Subsection (b) is applicable only where the passage of time or the drastic change of conditions makes the trust instrument's investment instructions "impractical" and injurious to the beneficiaries. No evidence was presented even alluding to the existence of such conditions in the instant appeal. The trust standard only becomes inapplicable if it would allow a fiduciary who acted in bad faith or with reckless indifference to the beneficiary's interests to escape liability. *Gouley v. Land Title Bank and Trust Co.*, 329 Pa. at 471, 198 A. at 9. *See* Restatement (Second) of Trusts § 222(2) (1959).

■ Paragraph eleven of the testator's will provides in pertinent part, "Neither of my executors or trustees shall have any liability for any mistake or error of judgment made in good faith." The trust instrument enunciates a fiduciary's standard of care that is fully within the acceptable measure. The law therefore requires its application and the Orphans' Court's failure to abide by that requirement constituted error.

**5.** The legislature's recognition of the trust instrument's preeminent position is also evidenced by 20 Pa.C.S.A. § 7134:

Subject only to the provisions of a governing instrument, if any, a trustee may accept, hold, invest in and retain investments as provided by Chapter 73 of this code . . .

■ This mistake is of little import in the instant appeal, for our review of the record supports an additional finding by the chancellor that "the accountants at all times acted in good faith and if the accountants made a mistake or error in judgment in the retention of any securities, such a mistake or error was made in good faith." Moreover, there is no assertion by appellant that the fiduciary acted in bad faith.

The evidence shows that the corporate fiduciary utilized an elaborate research analysis system in an effort to service its clients. A research department was established to supervise the trust investments. Securities analysts were employed to keep abreast of the market fluctuations in order to identify potential investments. Additional data was obtained from various high quality "Wall Street" research firms. Finally, not only did an investment committee review the research report findings with their trust accounts in mind, but an individual manager was appointed to maintain constant supervision over each portfolio.[6] The retention of the specific blocks of stock was justified by an overall investment strategy which the evidence showed was shared by the testator as well as the other co-executor. The strategy sought to identify financially sound companies, invest in them and "stick" with them through even volatile periods. This it was believed would achieve a more stable investment which, while in the short run might not appear as profitable as others, in the long run, would provide steady and significant financial remuneration for the trust beneficiaries.

In summary, a review of the evidence supports a finding that appellee acted in accordance with the standard prescribed in the trust document in its management of the securities portfolio. Accordingly, we affirm the final decree. Each party to pay own costs.

LARSEN, J., concurred in the result.

6. Howard Livingston served as the Niessen portfolio manager from the death of the testator until March 1974. Herbert A. Trucksess completed the accounting period.