## Grote Trust

*Richard B. Tucker*, for accountant.

*John C. Hanna*, for objectors.

OPINION BY EUNICE ROSS, J., JANUARY 8, 1981:

The Union National Bank, successor trustee of the inter vivos trust of Frederick C. Grote, who died May 29, 1954, has filed its second and partial account dated October 31, 1979. Current income beneficiary, Dorothy Grote Voss, and future beneficiary of one-third of income, Carlyn Voss Iuzzolino, have filed objections to the account form, to mathematical errors therein, to the trustee's retention of 6000 shares of Provident National Corporation and to the trustee's alleged failure to secure Mrs. Iuzzolino's written consent to investments once she attained 25 in July, 1970. The other future beneficiary of two-thirds of income, the Allegheny County Bar Association, has filed no objections.

The settlor entered into the revocable trust agreement dated December 13, 1949, with accountant's predecessor, Commonwealth Trust Company, as trustee. Certain securities including stock of Union Title Guaranty Company, now Provident National Corporation, were delivered to the trustee which was to pay income to the settlor for life under paragraph 1 of the instrument. If the trust were not previously revoked, the trustee at settlor's death was to pay principal to his daughter, Dorothy Grote Voss, or, if she died before settlor, income was to be paid his granddaughter, Mrs. Iuzzolino, until she was 35 at which time she was to receive principal.

The agreement in paragraph 2 gave the settlor all investment powers during his life. If the daughter outlived him, the trust ended. If she did not, the trust continued and the trustee (limited to legal investments) had sole investment discretion until the granddaughter became 25. Thereafter, the legal investment limitation was removed but a new condition was added that, until the end of the trust when the granddaughter reached 35, investments could be made only on her written approval.

Settlor's will dated February 6, 1953, exercised his reserved right to change his inter vivos trust beneficiaries. The daughter's remainder interest on surviving her father was cut to a right to income for life with a remainder in income in perpetuity in the Allegheny County Bar Association. The granddaughter's income and principal remainder interests (if her mother predeceased settlor) were diminished by the will which gave Mrs. Iuzzolino only one-third of the income during the settlor's wife's life if Mrs. Voss predeceased the settlor's widow. Upon the death of the widow, all income went to the bar association.

At the audit of the trustee's first and partial account filed October 21, 1954, the sui juris parties stipulated that Mrs. Voss was to receive income for life and at her death her daughter (then 9) would receive one-third of the income, the bar association the balance.

The decree of distribution of June 17, 1960, awarded the balance to the trustee including among other assets 3225 shares of Union Title Guaranty Company which through sales for expenses, splits and exchanges became 7113 shares of convertible preferred stock of Provident National Corporation.

In 1973 and 1974 there were correspondence and a September 24, 1973, meeting between the trustee and counsel for the individual beneficiaries about trust investment changes. The beneficiaries' counsel asked trustee representatives to sell certain assets, including all Provident shares, and to reinvest the proceeds with the aim of yielding more income for Mrs. Voss. Her counsel also contended that Mrs. Iuzzolino (only a future one-third income beneficiary) had the right to approve investments. The trustee, on advice of its counsel, rejected the

right of Mrs. Iuzzolino to control what it asserted was its sole investment power.

The trustee's representatives did not object to the principle that there should be an eventual sale of all Provident stock. It demurred to the daughter's attorney's pressure for the *immediate* sale of all stock of Provident regardless of *price* in order to secure higher yield since it believed there was a duty not only to the current beneficiary (the daughter) but also to successor beneficiaries (the granddaughter and bar association). The Provident yield in September, 1973, was 6.10%.

After this time, there were no further communications by the individual beneficiaries as to investments nor as to the right of the trustee to manage the trust without Mrs. Iuzzolino's written consent until the filing of this account.

In determining whether to sell and reinvest or retain the 7113 Provident shares, the trustee conducted semi-annual reviews of the portfolio by its account investment officer, its account administrative officer and its investment and its trust committees. Because of favorable reports of future higher Provident earnings and after considering the possibility of depressing the market by unloading 7113 shares of Provident at one fell swoop, the trustee decided to sell 1113 Provident shares on January 2, 1974, at 32½ per share for $35,894.25, a gain of $32,902.74 over carrying value. At the same time the trustee sold most other securities mentioned by Mrs. Voss' counsel as being appropriate for sale. Donald L. Dawson, former trust officer of the trust, testified he had suggested holding the Provident shares for a price of 35 per share.

Robert Montgomery, vice president of the trustee's investment department, testified retention of the 6000 shares was based upon a consideration of the expansion by Provident, a one-bank holding company, into housing, title insurance and mortgages. Earnings in 1973-1974 were at a high. The 1974 recession decreased housing area earnings deflating the stock's value but thereafter Provident changed its emphasis to direct bank operations to secure higher profits. Mr. Montgomery sees a positive future for Provident and believes current market price is not indicative of true worth of Provident shares which should not be sold at the currently depressed price.

176

The heart of the present controversy lies in objections 8 and 2. Objection 8 asserts the trustee failed to perform its "self-represented skill" or to carry out the grantor's intent when it retained the 6000 Provident Shares (said to be 58.3% of the market value of the trust at the time of the account) which might have been sold at from $15.50 to $32.25 a share from January, 1974, to account date. Objection 2 contends that after July, 1970, the trustee could make no investment without the written approval of Mrs. Iuzzolino and therefore the Provident retention was improper as were other principal purchases, sales or conversions accounted for.

The court deals first with objection 8 whether the trustee failed to exercise its "self-represented skill" and carried out the settlor's intent in the retention of the 6000 Provident shares, which in another form had been received from the settlor and represent the balance retained after sale of 1113 shares. There is no allegation that the trustee held itself out to settlor as having more expertise than that of the usual corporate trustee.

The record established that the partial sale of Provident, the retention of the balance of Provident for higher yield and the refusal to sell while sale price was depressed were a result of the trustee's balancing of interests of current and future income beneficiaries, of ensuring higher income while selling only for a price consonant with true value. No loss is alleged by objectors who merely object to the failure to diversify as to the 6000 shares. The trustee's maintenance of a safe balance between competing interests, *i.e.*, those of the present income beneficiary as against successor income beneficiaries, is not an abuse of discretion: *Estate of Hamill,* 487 Pa. 592, 600.

Diversification of trust investments is not necessarily required by the law of Pennsylvania so long as investments are proper or legal: *Estate of Knipp,* 489 Pa. 509, 414 A.2d 1007, 1009; *Romberger's Est.,* 39 D. & C. 604, 610. The question of the propriety of retention must be decided on a case by case basis and is resolved by a consideration of what decision a prudent invester in the circumstances and with the skill of the accounting fiduciary would have made: *Lentz Est.,* 364 Pa. 304, 309. A bank may be held to a higher standard of skill in

managing investments if it represented possession of superior skill: *In re Mendenhall,* 484 Pa. 77, 80; *Killey Trust,* 457 Pa. 474, 477-478. See also *Estate of Niessen,* 489 Pa. 135, 413 A.2d 1050, 1053, where retention of a large block of stock in and of itself was not presumed to be an improper action of the fiduciary which, as in the present case, based its retention policy on extensive investment review. Retention has also been held reasonable if a too large offering of stock would depress the market or if lower prices would require a sacrifice sale: *Estate of Stetson,* 463 Pa. 64, 77; *Seamans Est.,* 333 Pa. 358, 364. Such factors were present in this case.

Failure to diversify alone does not justify trustee surcharge and in the instant case none has been requested. Neither has it been alleged that there was a loss and without a loss there can be no surcharge: *Killey Trust,* 29 Fiduc. Rep. 437, 440. See also footnote 3 in *In re Mendenhall, supra,* at p. 82.

If the objectors seek to have the court order the trustee to diversify, they must fail for the court may not substitute its discretion for that vested in it by the settlor (assuming no right in the granddaughter to control investments): *Carwithen Est.,* 327 Pa. 490, 493; *Middleton Est.,* 1 D. & C. 2d 162, 167; *Sirbaugh Est.,* 102 Montg. 280, 282.

Nothing in decedent's inter vivos trust or will manifests any intent that assets received from the settlor must not be retained but rather complete discretion as to legal investments was given the fiduciary.

Objection 8 will be dismissed.

Related to the prior question is objection 2 which would have the court hold that after July, 1970, no investment could be made by the trustee without the written approval of settlor's granddaughter.

In resolving the issue the court must look to the settlor's intent as manifested in the trust agreement and will: *Estate of Niessen,*   Pa.  , 413 A.2d 1050, 1053, and Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, §7319, 20 Pa. C.S.A. 7319.

Ordinarily a trustee need not accede to requests of a life tenant to maximize current trust income or to make certain

investments but must exercise its discretion to balance the interests of current income beneficiaries and those of successor interests: *Estate of Hamill, supra,* p. 410 and p. 773.

Paragraph 2 of the trust relating to investment powers must be read in light of the gift in paragraph 1 of a life estate interest in settlor, principal in remainder to his daughter if living at his death, or, if his daughter were then dead, of an interest in income until aged thirty-five in his granddaughter who then received *all trust assets.* Paragraph 2 restricted the trustee during settlor's life to investments and sales at his written direction. If the granddaughter's income estate took effect, the trustee after settlor's death had sole investment discretion in legals until the granddaughter become 25. From 25 until her receipt of principal at 35, the trustee could invest without limitation upon the written approval of the granddaughter.

Paragraph 7 of settlor's will cut the granddaughter's interest from income until 35 and *all trust assets at 35* (if her mother died before settlor) to *income for the life of the settlor's widow* if the granddaughter's mother died before the widow. At the widow's death, the bar association got all income forever. No principal in remainder was ever to go to the granddaughter either at 35 or thereafter.

The change of testamentary provision written when the granddaughter was aged 8 and cutting her interest from a possible remainder in all trust assets at 35 to a possible right to income *pur autre vie* manifests an intent by the settlor not only to reduce the granddaughter's share of the trust but also to do away with the prior right to control investments at age 25. She previously could have been life tenant with a right to all trust assets at 35. Now her interest could be only in income during her grandmother's life. (The stipulation of course has no bearing on settlor's intent). When the granddaughter's interest was diminished, her right to control investments was extinguished.

To hold otherwise would reach the absurd conclusion that settlor intended one with a very limited trust interest to have the right to control investments: *Frank Trust,* 400 Pa. 614,

620; *Walker Est.*, 376 Pa. 16, 22; *Umberger Est.*, 369 Pa. 587, 592.

Objection 2 will be dismissed.

Objectors in objection 1 contend the account must be stated in accordance with the form adopted November, 1973, by the Pennsylvania Supreme Court so that market value at the date of the account as well as carrying value must be shown although no distribution of principal is to be made. The trustee followed local Orphans' Court Rule 3, Form E, which objectors say conflicts with Supreme Court Orphans' Court Rule 6.1(e) and is invalid.

Supreme Court Orphans' Court Rule 6.1(e) provides that accounts may be stated on Supreme Court or locally approved forms as "the accountant may elect". A member of the Supreme Court Orphans' Court Rules Committee testified that the use of either form is proper. The committee report provides that the use of Supreme Court form "is not mandatory . . . and any practitioner who desires to . . . use any other form . . . permitted by local rule . . . is free to do so. Thus, approval of these forms . . . simply makes an additional tool available to those who will find it convenient . . . to prepare and state accounts in the same form in more than one county": 3 *Partridge-Remick, Pa. O.C. Practice,* p. 81.

Objection 1 will be dismissed.

The trustee has agreed to make any adjustment necessary as to the credit for trustee's compensation and to correct mathematical errors in the account (the subject of objections 3, 5, 6 and 7). These objections will be sustained with an eye to the provided stipulation by counsel.

The trustee has requested an allowance out of income for reasonable costs, including counsel fees, incurred in the successful defense of this action. Such costs are allowable and will be charged when properly proved against current income so that the bar association's future right to income will not be diminished. See *Lavino Trust,* 30 FIDUC. REP. 176, 187; *In re Fishel Land Company Matter,* 27 FIDUC. REP. 237, 238; *Smith Trust,* 21 FIDUC. REP. 312, 327-328.

The court will enter a separate order setting the date and time for hearing on the issue of reasonable costs.