**BLACK GOLD COAL CORPORATION,**
Appellee,

v.

**SHAWVILLE COAL COMPANY,**
Appellant.

No. 83–5408.

United States Court of Appeals,
Third Circuit.

Argued Jan. 26, 1984.

Decided April 2, 1984.

Daniel F. Ryan, III (argued), Constance B. Foster, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for appellant.

Jon Hogue (argued), Darlene M. Nowak, Titus Marcus & Shapira, Pittsburgh, Pa., for appellee.

Before ADAMS and GARTH, Circuit Judges and COHEN, District Judge.[*]

## OPINION OF THE COURT

GARTH, Circuit Judge.

Shawville Coal Company, the defendant-appellant in this matter, operates mines in central Pennsylvania. Black Gold Coal Corporation is an Ohio-based coal broker. This action arose out of a dispute between Shawville and Black Gold concerning the calculation of the final price to be paid by Black Gold to Shawville under agreements

---

[*] Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation.

to purchase coal in 1978–1979. Because we conclude that, according to Pennsylvania law, the district court judge erred in awarding prejudgment interest to Black Gold, we will reverse the judgment below and remand this case to the district court.

## I.

As part of an ongoing business relationship, Black Gold would purchase coal from Shawville at a price to be set prior to each shipment. Black Gold then sold the coal to another broker or to a utility company. Both parties agree that

> [u]nder the terms of the agreement between Black Gold and Shawville, Shawville was to furnish coal of a certain quality (12,300 BTU's) to Black Gold. The agreement provided that if the coal fell below 12,100 BTU's, Shawville would be liable for a penalty, and if the coal tested above 12,500 BTU's, Shawville would be entitled to a premium from Black Gold.

Appellant's Brief at 5. Ultimately, disputes arose concerning price adjustments for allegedly substandard coal delivered during three quarters of the relevant time period. Black Gold sought to recover alleged overpayments to Shawville for two quarters (June 1978-August 1978; December 1978-February 1979), while Shawville sought complete payment for one quarter (March 1978-May 1978), alleging Black Gold's unlawful withholding of final payment following its declaration that a price adjustment was in order.

By letter dated February 7, 1979, Black Gold assessed Shawville the penalty for allegedly substandard coal shipped in March—May 1978. The ensuing dispute between the parties concerned the various components of the formula to be used in calculating the appropriate price adjustment.

Finally, Black Gold filed this action against Shawville seeking damages for Shawville's alleged breach of contract in failing to tender money assessed as penalty pursuant to a formula allegedly contained in a premium/penalty clause in a contract for the sale of coal. Shawville answered, denying any penalty owed, and counterclaimed for monies owed to it for the purchase of coal pursuant to the agreement. Trial was had before a jury, and the jury returned a verdict in the amount of $47,-034.34 in favor of Black Gold, and $9,617.66 on Shawville's counterclaim.

Black Gold then filed a timely motion seeking to amend the judgment to add prejudgment interest as a matter of law in the amount of $12,281.99. Shawville responded by arguing that Pennsylvania law does not permit an award of prejudgment interest where the amount of damages is unliquidated. Following additional briefing by both parties, the district court issued an Opinion and Order awarding Black Gold prejudgment interest in the amount of $8,418.75 (the figure submitted by Shawville as proper "if" Shawville was obliged to pay prejudgment interest).

Shawville brought this appeal alleging an error by the district court judge in applying Pennsylvania law to the facts of this case. Shawville argues that prejudgment interest cannot be awarded as a matter of right unless there were *liquidated* damages unjustly withheld, which Shawville claims there were not in this case. We conclude the district court judge misapplied Pennsylvania law, and that Black Gold did not carry its burden of proving that the contract satisfied the appropriate Pennsylvania standard for awarding prejudgment interest. We therefore reverse.

## II.

Initially, we observe that no appeal has been taken from the underlying judgment which resulted from the jury's verdict resolving the basic contract dispute between the parties. It is only the award of prejudgment interest that is challenged in this proceeding. We also observe that although the law governing the issue in this case is clear, the record appears somewhat incomplete and the arguments made can, in many respects, be characterized as contradictory. Nevertheless, after a careful review of the record, we are satisfied that the prejudg-

ment interest issue may be resolved on the record before us.

The law of Pennsylvania applies to this diversity case. In *Penneys v. Pennsylvania R.R. Co.*, 408 Pa. 276, 183 A.2d 544 (1962), the Pennsylvania Supreme Court adopted section 337(a) of the Restatement of Contracts with regard to the awarding of prejudgment interest.[1] That section provides:

> If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:
>
> (a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

■ Recovery of prejudgment interest under this standard is a matter of law, not of discretion. *Sun Shipbuilding & Dry Dock Co. v. United States Lines, Inc.*, 439 F.Supp. 671, 675 (E.D.Pa.1977), *aff'd*, 582 F.2d 1276 (3d Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979); *Gold & Co., Inc. v. Northeast Theatre Corp.*, 281 Pa.Super. 69, 76, 421 A.2d 1151, 1152 (1980). Thus, in Pennsylvania, prejudgment interest in a contract action may be recovered only if (1) a defendant commits a breach of a contract to pay a definite sum of money; or (2) a defendant commits a breach of contract to render a performance the value of which in money is stated in the contract; or (3) *a defendant commits a breach of contract to render a performance the value of which is ascertainable by mathematical calculation from a standard fixed in the contract;* or (4) a defendant commits a breach of a contract to render a performance the value of which in money is ascertainable from established market prices of the subject matter.

■ Black Gold relies only upon the provisions of number (3) above to support its claim for prejudgment interest, and that is the only basis on which the district court judge granted such interest. Thus, our review must focus on the contract between Black Gold and Shawville to determine if it contains a fixed standard by which to calculate damages. *See Thomas v. Allegheny & Eastern Coal Co.*, 309 Pa.Super. 333, 455 A.2d 637 (1982).

Although section 337(a) does not use the term "liquidated damages," the concept is implicit in that section, that the value be ascertainable or settled, *i.e.* liquidated, in the contract. In *American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1056 (3d Cir.1982), this court discussed the "two distinct sources of compensation for delay," or prejudgment interest, under Pennsylvania law. As relevant to this appeal, we explained that prejudgment interest in Pennsylvania contract actions involving *liquidated* sums is a matter of right. We also explained that the Pennsylvania contract prejudgment interest rule was an extension of the common law rule that allowed damages for delay in such but only where *liquidated* sums were involved. Thus, under Pennsylvania law, for prejudgment interest to be awarded the underlying debt must be liquidated as that term has come to be defined by Pennsylvania law.[2] Accordingly, unless the obligation which

---

1. Restatement of Contracts § 337(a) (1932) is currently found at Restatement (Second) of Contracts § 347(a) (1981).

2. *See, e.g., American Enka Co. v. Wicaco Machine Corp.*, 686 F.2d 1050, 1057 (3d Cir.1982) ("A debt is considered liquidated when it is capable of ascertainment with mathematical precision, or ... 'by market value or other definite standards,' and a dispute between two amounts so ascertained does not alter its liquidated character."); *Hussey Metals Div. of Copper Range Co. v. Lectromelt Furnace Div., McGraw Edison Co.*, 417 F.Supp. 964, 968–69 (W.D.Pa. 1976), *aff'd mem.*, 556 F.2d 566 (3d Cir.1977) (where plaintiff sought recovery of purchase price and repair costs and evidence as to such

was determined to be owed to Black Gold can be said to qualify as a "liquidated sum," no prejudgment interest may be awarded.

The district court judge referred to "contractual agreements" in explaining both the business arrangement between Shawville and Black Gold and the derivation of the formula upon which he relied. *See* App. 199a–201a. As to this critical formula, the judge wrote in his opinion awarding prejudgment interest: "Having heard the evidence it appears that the following formulas provide a general outline on how to calculate the appropriate price adjustment." App. 201a. The formula to which the district court judge referred was a three-part formula which the judge apparently accepted from the testimony of one of Black Gold's witnesses. It is important to note that the district court judge did not claim to find that particular formula in the contract(s) between Shawville and Black Gold.

Mr. Dolan, Vice President of Finance and Treasurer of Black Gold, testified on direct examination as to how Black Gold calculated the amount Shawville owed it, to wit, "[b]y taking the formula that was part of the contractual terms among the parties ... and then going through the agreed formula...." (App. 54a). On cross-examination, however, Dolan admitted that the language of the formula as he described it to the jury was drawn from records of Black Gold and Pickands Mather (a subsequent broker) and was *not* to be found in the "contract language" or contract terms

of "Exhibit P–13." [3] Dolan also admitted that he had never seen a document whereby Shawville agreed to the formula that Dolan had explained to the jury. App. 67a–68a. We are somewhat confused, therefore, by the district court judge's reliance on "contractual arrangements" between Shawville and Black Gold to support his use of the formula recited in his opinion, App. 201a. [4] Black Gold claimed in its brief that

[t]he contracts between Black Gold and Shawville were a part of a four-party agreement between litigants, Pickands, Mather & Co., the subsequent broker of the coal, and Potomac Electric Power Company, the ultimate consumer. All the contracts contained an identical premium/penalty clause, which is also an industry-wide practice. [App. at 33a].

Appellee's Br. at 5 n. 1. However, none of these above-referenced "contracts" were submitted to this court. Indeed, no contract has been found in the record which sets out the formula upon which Black Gold relies. Nor can Black Gold rely upon an October 1977 letter agreement, which is a part of the record, as the source of the formula used by the district court judge, for even a cursory comparison of the "formula" purportedly supplied by that letter and that recited in the district court opinion indicates that the two formulas are not identical. [5]

The burden of proof lies with the party seeking prejudgment interest under a contract. We conclude that Black Gold, by failing to establish the relevant contract

---

costs varied considerably, damages could not be characterized as a "definite sum" etc. within the terms of section 337(a)); *Oxford Manufacturing Co. v. Cliff House Bldg. Corp.*, 224 Pa.Super. 387, 390, 307 A.2d 343, 345 (1973) (claimed sum based on contract purchase price was not unliquidated merely because defendant disputed amount of plaintiff's claim).

3. Much of the relevant discussion concerns Exhibit P–13, *see* App. 61–63, but that document does not appear to be among those documents submitted to our court.

4. At first glance Shawville's argument appears to be somewhat confusing. Shawville claims both that its "agreement" with Black Gold pro-

vided for premium/penalty payment, Appellant's Br. at 5, and that "the contracts between the parties did not contain a formula which was used by Black Gold in computing its penalty assessment." *Id.* This seeming contradiction is easily explained, however, for while both parties agree that a premium/penalty clause was part of the agreement between them, Shawville contends that that clause did not contain a formula for determining the amount of the premium or penalty to be paid.

5. At oral argument, counsel for Black Gold even admitted that he had overstated his case when he argued that the two formulas were one and the same.

which provided the essential standard from which a precise mathematical calculation and damages could be assessed, failed to carry its burden of proof. Indeed, Black Gold's failure to make the relevant contract a part of the record contributed in large part to this failure.[6] Thus, the district court judge's reliance on a specific formula for determining damages—a formula which even he did not point to as existing in a specific contract between Shawville and Black Gold—as a basis for an award of prejudgment interest to Black Gold, cannot be sustained as it does not satisfy the standard of Restatement § 337(a).

In sum, since Black Gold did not satisfy its burden of proof in establishing a liquidated sum pursuant to section 337(a) of the Restatement of Contracts, the district court judge erred in awarding prejudgment interest to Black Gold. Accordingly, we will reverse and remand this case to the district court with instructions to modify the award consistent with the foregoing opinion.

---

**6.** Because no appeal has been taken from the basic contract dispute which the jury resolved, we have no reason to consider on what basis the jury rendered its verdict in the basic contract action between the two parties.